Mark J. Giunta (#015079)
Law Office of Mark J. Giunta
1413 N. 3rd St.
Phoenix, AZ 85004-1612
Phone (602) 307-0837
Fax (602) 307-0838
Email mark.giunta@azbar.org

Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings Under Chapter 11 |
| MISSOURI REALTY, LLC. | Case No. 2-09-bk-27743-GBN |
| Debtor. | |

**FIRST AMENDED PLAN OF REORGANIZATION DATED MARCH 15, 2010**

**PROPOSED BY THE DEBTOR**

_____

# ARTICLE I

## DEFINITIONS

**1.01** <u>**Defined Terms**</u>.  The capitalized terms used in this Plan shall have the meanings as set forth in Appendix "A" attached hereto.

**1.02** <u>**Undefined Terms**</u>.  Terms and phrases, whether capitalized or not, that are used and not defined in Appendix "A" attached hereto, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.

**1.03** <u>**Interpretation**</u>.  The headings in this Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01** <u>**General**</u>. For the purposes of organization only with respect to administrative expenses and for purposes of organization, voting and all Confirmation matters with respect to all Claims of Creditors of the Debtors, this Plan classifies Claims in separate and distinct Classes as follows:

**2.02** <u>**Class 1: Administrative Expenses**</u>.  Class 1 shall consist of the costs and expenses of administration as defined in § 503 of the Bankruptcy Code for which application or allowance is made, or a Claim is filed, as the same are allowed, approved, and ordered paid by the Court. Administrative Expenses shall consist of:  (1) all Claims arising under § 330 of the Bankruptcy

Code, including reasonable compensation for actual and necessary services rendered by a professional person (including attorneys) and by any paraprofessional persons employed by such, based on, among other things, the nature, extent and value of such services, the time spent on such services, and the cost of comparable services other than in a case under Title 11; (2) the costs and expenses of the administration of this proceeding, including, but not limited to, any Bankruptcy Court Clerk fees or Court Reporter's fees which have not been paid, the cost of reproduction and mailing of this Plan and the Disclosure Statement; (3) any post-petition operating expenses of the Debtors which are due and unpaid at Confirmation; and (4) the actual and necessary costs of preserving the Estate. This class includes the attorney's fees and costs incurred by counsel for the Debtor, Mark J. Giunta, in the approximate amount of $17,673.33 through January 31, 2010.

Class 1 also expressly includes any outstanding pre-confirmation quarterly fee payments owed by the Debtors to the United States Trustee.

**2.03  Class 2: Priority Claims**. Class 2 consists of all Allowed obligations, including tax obligations, of the Debtors which are entitled to priority under § 507(a)(8) of the Bankruptcy Code. The Debtor is not aware of any Priority Claims at this time.

**2.04  Class 3A:  Secured Claim of American Home Mortgage.** Class 3A consists of the Allowed Secured Claim of American Home Mortgage ("AMH") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $ 277,998 secured by a lien in a first position on a single family home located at 10554 E. Arbor Ave, Mesa AZ 85208 Phoenix, Az 85021 ("Arbor").

**2.05  Class 3B:  Secured Claim of American Home Mortgage.** Class 3B consists of the Allowed Secured Claim of American Home Mortgage ("AMH") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $155,961 secured by a lien in

a first position on a single family home located at 7749 W. Boca Raton, Peoria AZ 85381 ("Boca Raton").

**2.06** __Class 3C:  Secured Claim of American Home Mortgage.__  Class 3C consists of the Allowed Secured Claim of American Home Mortgage ("AMH") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $141,600 secured by a lien in a first position on a single family home located at 8001 W. Sweetwater Ave, Peoria AZ 85381 ("8001 W. Sweetwater").

**2.07** __Class 3D:  Secured Claim of American Home Mortgage.__  Class 3D consists of the Allowed Secured Claim of American Home Mortgage ("AMH") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $176,125 secured by a lien in a first position on a single family home located at 313 W. Topeka Drive, Phoenix AZ 85027 ("Topeka").

**2.08** __Class 3E:  Secured Claim of American Home Mortgage.__  Class 3E consists of the Allowed Secured Claim of American Home Mortgage ("AMH") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $139,789 secured by a lien in a first position on a single family home located at 7912 W. Whyman Ave, Phoenix AZ 85043 ("Whyman").

**2.09** __Class 3F:  Secured Claim American Service Corporation.__  Class 3F consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $147,154 secured by a lien in a first position on a single family home located at 1101 E, 8th Street, Mesa AZ 85203 ("8th St").

**2.10  <u>Class 3G:  Secured Claim of American Service Corporation.</u>**  Class 3G consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $258,834 secured by a lien in a first position on a single family home located at 15806 S. 35th Way, Phoenix AZ 85044 ("35th Way").

**2.11  <u>Class 3H:  Secured Claim of American Service Corporation.</u>**  Class 3H consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $215, 984 secured by a lien in a first position on a single family home located at 1654 W.Enfield Way, Chandler AZ 85248 ("Enfield").

**2.12  <u>Class 3I:  Secured Claim of American Service Corporation.</u>**  Class 3I consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $114,400 secured by a lien in a first position on a single family home located at 962 S. MacDonald, Mesa AZ 85210 ("MacDonald").

**2.13  <u>Class 3J:  Secured Claim of American Service Corporation.</u>**  Class 3J consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $160,000 secured by a lien in a first position on a single family home located at 8114 E. Mitchell Drive, Scottsdale AZ 85251 ("Mitchell").

**2.14  <u>Class 3K:  Secured Claim of American Service Corporation.</u>**  Class 3K consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $97,500 secured by a

lien in a first position on a single family home located at 6213 W. Osborn, Phoenix AZ 85033 ("Osborn").

**2.15 <u>Class 3L: Secured Claim of American Service Corporation.</u>** Class 3L consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $109,600 secured by a lien in a first position on a single family home located at 824 W. Paseo Way, Phoenix AZ 85041 ("Paseo Way").

**2.16 <u>Class 3M: Secured Claim of American Service Corporation.</u>** Class 3M consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $171,952 secured by a lien in a first position on a single family home located at 8068 E. Virginia Ave, Scottsdale AZ 85257 ("Virginia").

**2.17 <u>Class 3N: Secured Claim of Bank of America Home Loans.</u>** Class 3N consists of the Allowed Secured Claim of Bank of America Home Loans ("AHL") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $103,157 secured by a lien in a first position on a single family home located at 822 South 3rd Ave, Phoenix AZ 85003 ("3rd Ave").

**2.18 <u>Class 3O: Secured Claim of Chase Home Financial.</u>** Class 3O consists of the Allowed Secured Claim of Chase Home Financial ("CHF") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $127,805 secured by a lien in a first position on a single family home located at 921 E. Amelia Street, Phoenix AZ 85014 ("Amelia").

**2.19 <u>Class 3P: Secured Claim of Chase Home Financial.</u>** Class 3P consists of the Allowed Secured Claim of Chase Home Financial ("CHF") which prior to an 11 U.S.C. section

506 determination, has an approximate principal amount of $127,784 secured by a lien in a first position on a single family home located at 443 S. Grand Ave, Mesa AZ 85210 ("623 Grand").

**2.20** **Class 3Q:  Secured Claim of Chase Home Financial.**  Class 3Q consists of the Allowed Secured Claim of Chase Home Financial ("CHF") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $124,429 secured by a lien in a first position on a single family home located at 1723 E. Harvard Street, Phoenix AZ 85006 ("Harvard").

**2.21** **Class 3R:  Secured Claim of CitiMortgage Inc.**  Class 3R consists of the Allowed Secured Claim of CitiMortgage, Inc. ("CM") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $80,518 secured by a lien in a first position on a single family home located at 2724 E. Tamarisk Ave, Phoenix AZ 85040 ("Tamarisk").

**2.22** **Class 3S:  Secured Claim of Everhome Mortgage Company.**  Class 3S consists of the Allowed Secured Claim of Everhome Mortgage Company ("EMC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $117,626 secured by a lien in a first position on a single family home located at  ("801 S. 1st Ave, Phoenix AZ 85003").

**2.23** **Class 3T:  Secured Claim of Everhome Mortgage Company.**  Class 3T consists of the Allowed Secured Claim of Everhome Mortgage Company ("EMC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $89,871 secured by a lien in a first position on a single family home located at 2213 E. Sheridan Street, Phoenix AZ 85006 ("Sheridan").

**2.24 <u>Class 3U:  Secured Claim of M&I Mortgage Corporation.</u>**  Class 3U consists of the Allowed Secured Claim of M&I Mortgage Corporation ("M&I") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $95,151.54 secured by a lien in a first position on a single family home located at 1018 N. 26th Street, Phoenix AZ 85008 ("26th St").  M&I has made the election pursuant 11 U.S.C. section 1111(b).

**2.25 <u>Class 3V:  Secured Claim of National City Mortgage.</u>**  Class 3V consists of the Allowed Secured Claim of National City Mortgage ("NCM") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $109,000 secured by a lien in a first position on a single family home located at 623 S. Grand Ave, Mesa AZ 85210 ("623 Grand").

**2.26 <u>Class 3W:  Secured Claim of National City Mortgage.</u>**  Class 3W consists of the Allowed Secured Claim of National City Mortgage ("NCM") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $117,000 secured by a lien in a first position on a single family home located at 3526 E. McKinley, Phoenix AZ 85020 ("McKinley").

**2.27 <u>Class 3X:  Secured Claim of National City Mortgage.</u>**  Class 3X consists of the Allowed Secured Claim of National City Mortgage ("NCM") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $124,200 secured by a lien in a first position on a single family home located at 1428 E. Portland Street, Phoenix AZ 85006 ("Portland").

**2.28 <u>Class 3Y:  Secured Claim of Ocwen Loan Servicing, LLC.</u>**  Class 3Y consists of the Allowed Secured Claim of Ocwen Loan Servicing, LLC ("OLC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $91,461 secured by a

lien in a first position on a single family home located at 914 N. 40th Ave, Phoenix AZ 85009 ("40th Ave").

**2.29** **Class 3Z:  Secured Claim of Ocwen Loan Servicing, LLC.** Class 3Z consists of the Allowed Secured Claim of Ocwen Loan Servicing ("OLC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $102,439 secured by a lien in a first position on a single family home located at 1623 E. Cambridge Ave, Phoenix AZ 85006 ("Cambridge").

**2.30** **Class 3AA:  Secured Claim of Ocwen Loan Servicing, LLC** Class 3AA consists of the Allowed Secured Claim of Ocwen Loan Servicing, LLC ("OLC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $97,783 secured by a lien in a first position on a single family home located at 4225 North Longview Ave, Phoenix AZ 85014 ("Longview").

**2.31** **Class 3BB:  Secured Claim of Washington Mutual Bank.** Class 3BB consists of the Allowed Secured Claim of Washington Mutual Bank ("WMB") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $97,369 secured by a lien in a first position on a single family home located at 2244 N. 20th Street, Phoenix AZ 85006 ("20th St").

**2.32** **Class 3CC:  Secured Claim of Washington Mutual Bank.** Class 3CC consists of the Allowed Secured Claim of Washington Mutual Bank ("WMB") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $133,621 secured by a lien in a first position on a single family home located at 4024 S. Allred Drive, Tempe AZ 85282 ("Allred").

**2.33 Class 3DD:  Secured Claim of Maricopa County Treasurer.**  Class 3DD consists of the Allowed Secured Claim of Maricopa County Treasurer ("Maricopa County") which has an approximate principal amount of $36,000 secured by a lien in a senior position on the Debtor's single family homes in Maricopa County.

**2.34     Class 4: Unsecured Creditors Arising On Account of Any Deficiency Claims.** Class 4 consists of the Allowed Unsecured Claims on account of any deficiency claims.  These Claims shall be determined after the Court has conducted an 11 U.S.C. section 506 determination of secured status as to the Creditors holding Claims secured by the real property assets of the Debtor.  Any Creditors asserting such a Claim must do so by filing a Proof of Claim for the same within 30 days of the date of the entry of the Order by the Court setting forth is 11 U.S.C. section 506 determination of secured status as to that particular Creditor or the date of Confirmation whichever is earlier.

**2.35     Class 5: Claims of General Unsecured Creditors.**  Class 5 consists of the Allowed Unsecured Claims, other than the deficiency claims set forth in Class 4.

**2.36     Class 6: Equity Security Holders.**  Class 6 consists of the interests of Equity Security Holders which is the Debtor's sole member, Park Holdings, LLC.

**2.37     Elimination of Classes**.  Any Class that is not occupied as of the date of the hearing on confirmation of this Plan by an Allowed Claim or a Claim temporarily allowed pursuant to Rule 3019 of the Bankruptcy Rules shall be deemed deleted from this Plan for purposes of voting on acceptance or rejection of this Plan and for the purpose of determining whether this Plan has been accepted by such Class pursuant to Section 1129 of the Bankruptcy Code.

## ARTICLE III

### IDENTIFICATION OF IMPAIRED CLASSES OF
### CLAIMS AND EQUITY INTERESTS

**3.01** **Impaired Classes of Claims**.  Classes 3A through 3DD (except for Class 3U), 4, 5, and 6 are impaired under this Plan.  Administrative Expenses (Class 1) and Priority Tax Claims (Classes 2(a) and (b)) are treated in accordance with Section 1129(a)(9) of the Bankruptcy Code unless otherwise agreed to by the claimant.  All other classes are unimpaired.

**3.02** **Impairment Controversies**.  If a controversy arises as to whether any Claim or any class of Claims is impaired under this Plan, such class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Class or Claim under this Plan.

## ARTICLE IV

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
### REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**4.01** **Classes Entitled to Vote**.  Each impaired Class of Claims shall be entitled to vote separately to accept or reject this Plan.  Any unimpaired Class of Claims shall not be entitled to vote to accept or reject this Plan.

**4.02** **Creditors Not Entitled to Vote**.  Only Creditors holding Claims that are not contested may vote for the Plan unless authorized by the Court to do so after motion and court order entered prior to the Confirmation hearing unless Debtors stipulate to allow a Creditor temporary voting privileges.

**4.03    Class Acceptance Requirement**.  A Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted on this Plan.

**4.04    One Vote Per Holder**.  If a holder of a Claim holds more than one Claim in any one class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting on this Plan.

**4.05    Cramdown**.  Notwithstanding the rejection or deemed rejection of this Plan by any class of Claims, Debtors shall request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code.


**ARTICLE V**

**TREATMENT OF ADMINISTRATIVE EXPENSES
AND CLASSES NOT IMPAIRED UNDER THE PLAN**

**5.01    Class 1: Administrative Expenses**.  The allowed amount of Administrative Expenses shall be paid:

(A)    On the later of:  (1) the Effective Date; or (2) ten days after an Order approving the Administrative Expenses is entered if the Claim is one of a professional person employed under Sections 327 or 1103 of the Bankruptcy Code or otherwise employed by the Bankruptcy; or (3) for all other Administrative Expenses, twenty days after the Claim becomes an Allowed Claim; or

(B)    Through such other treatment as may be agreed in writing by such holder of an Administrative Expense or as expressly set forth herein; provided, however, an Allowed Administrative Expense representing a liability incurred in the ordinary course of business shall be paid by Debtors upon presentment or otherwise in accordance with the terms of the particular

transaction and any agreements relating thereto.

     **5.02**   **Class 2: Priority Tax Claims**.  Debtors will pay all Class 2 claims, to the extent any exist, in 5 years, in even annual cash payments, commencing one year after the Effective Date, a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim consistent with 11 U.S.C. section 1129(a)(9)( C).

     **5.03**   **Class 3U: Secured Claim of M&I Mortgage Corporation**.  M&I shall retain all liens and security interests it holds in the 26th St Property.  M&I's legal, equitable, and contractual rights as a Secured Creditor holding a security interest in the 26th St Property shall not be altered in anyway by the Plan within the meaning of, and consistent with, 11 U.S.C. Section 1124(1).

**ARTICLE VI**

**TREATMENT OF CLASSES
IMPAIRED UNDER THE PLAN**

     **6.01**  **Class   3A:     Secured    Claim    of    American    Home    Mortgage**

     The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the Arbor property as defined above in Class 3A shall be determined by the Court pursuant to 11 U.S.C. section 506.  The Debtor's updated valuation of the property establishes a current section 506 valuation of $144,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $147,500.  The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest.  For example, based on an

Allowed Secured Claim Amount of $147,500.00 the monthly payment to the Claimant shall be in the amount of ($810.95) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if AMH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. AHM shall retain all its liens and security interests in the Arbor Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Arbor Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor, the Debtor's affiliates or its principles.

**6.02** **Class 3B: Secured Claim of American Home Mortgage**

The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the Boca Raton property as defined above in Class 3B shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $130,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $132,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For

example, based on an Allowed Secured Claim Amount of $132,500 the monthly payment to the Claimant shall be in the amount of ($728.48) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if AMH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. AHM shall retain all its liens and security interests in the Boca Raton Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Boca Raton Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor, Debtor's affiliates or its principles.

**6.03** <u>Class 3C: Secured Claim of American Home Mortgage</u>

The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the 8001 W. Sweetwater property as defined above in Class 3C shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $121,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $123,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For

- 15 -

example, based on an Allowed Secured Claim Amount of $123,500 the monthly payment to the Claimant shall be in the amount of ($679.00) commencing the first day of the second month after the Effective Date.  There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if AHM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest.  The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date.  AHM shall retain all its liens and security interests in the 8001 W. Sweetwater Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 8001 W. Sweetwater Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor, Debtor's affiliates, or its principles.

**6.04 <u>Class 3D:  Secured Claim of American Home Mortgage</u>**

The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the Topeka property as defined above in Class 3D shall be determined by the Court pursuant to 11 U.S.C. section 506.  The Debtor's updated valuation of the property establishes a current section 506 valuation of $85,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $87,500.  The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest.  For example, based on an

- 16

Allowed Secured Claim Amount of $87,500 the monthly payment to the Claimant shall be in the amount of ($481.07) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if AHM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. AHM shall retain all its liens and security interests in the Topeka Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Topeka Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor, Debtor's affiliates, or its principles.

**6.05** <u>**Class 3E: Secured Claim of American Home Mortgage**</u>

The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the Whyman property as defined above in Class 3E shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $65,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $67,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

Allowed Secured Claim Amount of $67,500 the monthly payment to the Claimant shall be in the amount of ($371.11) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to "AHM" left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. "AHM" shall retain all its liens and security interests in the Whyman Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Whyman Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor, Debtor's affiliates, or its principles.

**6.06 Class 3F:     Secured Claim of American Service Corporation**

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the 8th St property as defined above in Class 3F shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $94,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $96,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

Allowed Secured Claim Amount of $96,500, the monthly payment to the Claimant shall be in the amount of ($530.56) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the 8th St Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 8th St Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates, or its principles.

**6.07 Class 3G: Secured Claim of American Service Corporation**

The Allowed amount of the Secured Claim American Service Corporation ("ASC") secured by the 35th Way property as defined above in Class 3G shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $289,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $258,800. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based

- 19 -

on an Allowed Secured Claim Amount of $258,800 the monthly payment to the Claimant shall be in the amount of ($1,418.48) commencing the first day of the second month after the Effective Date.  There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest.  The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date.  ASC shall retain all its liens and security interests in the 35th Way Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 35th Way Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates, or its principles.

**6.08** **Class 3H:** **Secured Claim of American Servicing Corporation**

The Allowed amount of the Secured Claim of American Servicing Corporation ("ASC") secured by the Enfield property as defined above in Class 3H shall be determined by the Court pursuant to 11 U.S.C. section 506.  The Debtor's updated valuation of the property establishes a current section 506 valuation of $185,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $188,500.  The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest.  For example, based on an

Allowed Secured Claim Amount of $188,500, the monthly payment to the Claimant shall be in the amount of ($1,036.37) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the Enfield Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Enfield Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates, or its principles.

**6.09** <u>**Class 3I:**</u>   **Secured   Claim   of   American   Servicing   Corporation**

The Allowed amount of the Secured Claim of American Servicing Corporation ("ASC") secured by the MacDonald property as defined above in Class 3I shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $25,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $27,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For

example, based on an Allowed Secured Claim Amount of $27,500 the monthly payment to the Claimant shall be in the amount of ($151.19) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the MacDonald Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the MacDonald Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates or its principles.

**6.10** <u>**Class 3J:** **Secured Claim of American Service Corporation**</u>

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Mitchell property as defined above in Class 3J shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $132,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $135,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

Allowed Secured Claim Amount of $132,500 the monthly payment to the Claimant shall be in the amount of ($744.98) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the Mitchell Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Mitchell Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates or its principles.

**6.11 <u>Class 3K: Secured Claim of American Service Corporation</u>** The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Osborn property as defined above in Class 3K shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $25,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $26,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim

Amount of $26,500, the monthly payment to the Claimant shall be in the amount of ($145.70) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the Osborn Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Osborn Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates, or its principles.

**6.12 Class 3L: Secured Claim of American Service Corporation**

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Paseo Way property as defined above in Class 3L shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $36,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $38,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For

example, based on an Allowed Secured Claim Amount of $38,500 the monthly payment to the Claimant shall be in the amount of ($211.67) commencing the first day of the second month after the Effective Date.  There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest.  The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date.  ASC shall retain all its liens and security interests in the Paseo Way Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Paseo Way Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates, or its principles.

**6.13** <u>**Class 3M:**</u>        <u>**Secured Claim of American Service Corporation**</u>

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") of H secured by the Virginia property as defined above in Class 3A shall be determined by the Court pursuant to 11 U.S.C. section 506.  The Debtor's updated valuation of the property establishes a current section 506 valuation of $166,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $168,500.  The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest.  For

example, based on an Allowed Secured Claim Amount of $168,500, the monthly payment to the Claimant shall be in the amount of ($926.41) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the Virginia Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Virginia Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor, Debtor's affiliates, or its principles.

**6.14 <u>Class 3N: Secured Claim of Bank of America Home Loans</u>**

The Allowed amount of the Secured Claim of Bank of America Home Loans ("BofA") secured by the 3rd Ave property as defined above in Class 3N shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $19,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $21,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

Allowed Secured Claim Amount of $21,500 the monthly payment to the Claimant shall be in the amount of ($118.21) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to BofA left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if BofA elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. BofA shall retain all its liens and security interests in the 3rd Ave Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 3rd Ave Property to BofA in full satisfaction of any and all Claims held by BofA against the Debtor, Debtor's affiliates, or its principles.

**6.15 Class 3O:        Secured        Claim        of        Chase        Home        Financial**

The Allowed amount of the Secured Claim of Chase Home Financial ("CHF") secured by the Amelia property as defined above in Class 3O shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $30,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $32,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed

Secured Claim Amount of $32,500, the monthly payment to the Claimant shall be in the amount of ($178.68) commencing the first day of the second month after the Effective Date.  There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to CHF left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if CHF elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest.  The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date.  CHF shall retain all its liens and security interests in the Amelia Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Amelia Property to CHF in full satisfaction of any and all Claims held by CHF against the Debtor, Debtor's affiliates, or its principles.

**6.16** **Class     3P:          Secured     Claim     of     Chase     Home     Financial**

The Allowed amount of the Secured Claim of Chase Home Financial ("CHF") secured by the 443 Grand property as defined above in Class 3P shall be determined by the Court pursuant to 11 U.S.C. section 506.  The Debtor's updated valuation of the property establishes a current section 506 valuation of $30,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $32,500.  The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest.  For example, based on an Allowed

Secured Claim Amount of $32,500, the monthly payment to the Claimant shall be in the amount of ($178.68) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to CHF left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if CHF elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. CHF shall retain all its liens and security interests in the 443 Grand Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 443 Grand Property to CHF in full satisfaction of any and all Claims held by CHF against the Debtor, Debtor's affiliates, or its principles.

**6.17 Class 3Q: Secured Claim of Chase Home Financial**

The Allowed amount of the Secured Claim Chase Home Financial ("CHF") secured by the Harvard property as defined above in Class 3Q shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $24,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $26,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed

Secured Claim Amount of $26,500, the monthly payment to the Claimant shall be in the amount of ($145.70) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to CHF left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if CHF elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. CHF shall retain all its liens and security interests in the Harvard Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Harvard Property to CHF in full satisfaction of any and all Claims held by CHF against the Debtor, Debtor's affiliates or its principles.

**6.18 <u>Class 3R: Secured Claim of CitiMortgage Inc.</u>**

The Allowed amount of the Secured Claim of CitiMortgage, Inc. ("Citi") of NH secured by the Tamarisk property as defined above in Class 3R shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $22,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $24,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed

Secured Claim Amount of $24,500 the monthly payment to the Claimant shall be in the amount of ($134.70) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to Citi left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if Citi elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. Citi shall retain all its liens and security interests in the Tamarisk Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Tamarisk Property to Citi in full satisfaction of any and all Claims held by Citi against the Debtor or its principles.

### 6.19 <u>Class 3S:        Secured   Claim   of   Everhome   Mortgage   Company</u>

The Allowed amount of the Secured Claim of Everhome Mortgage Company ("EMC") secured by the 1st Ave property as defined above in Class 3S shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $25,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $26,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

Allowed Secured Claim Amount of $26,500 the monthly payment to the Claimant shall be in the amount of ($145.70) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to EMC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if EMC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. EMC shall retain all its liens and security interests in the 1st Ave Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 1st Ave Property to EMC in full satisfaction of any and all Claims held by EMC against the Debtor, Debtor's affiliates or its principles.

**6.20** <u>**Class 3T:**</u> <u>**Secured Claim of Everhome Mortgage Company**</u>

The Allowed amount of the Secured Claim of Everhome Mortgage Company ("EMC") secured by the Sheridan property as defined above in Class 3A shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $35,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $37,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

Allowed Secured Claim Amount of $37,500 the monthly payment to the Claimant shall be in the amount of ($206.17) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to EMC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if EMC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. EMC shall retain all its liens and security interests in the Sheridan Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Sheridan Property to EMC in full satisfaction of any and all Claims held by EMC against the Debtor, Debtor's affiliates or its principles.

**6.21** [Left Blank On Purpose].

**6.22 Class 3V:       Secured     Claim     of     National     City     Mortgage.**

The Allowed amount of the Secured Claim of National City Mortgage ("NCM") secured by the 623 Grand property as defined above in Class 3V shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $17,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $18,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $18,500, the monthly payment to the Claimant shall be in the amount of ($101.71) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to NCM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NCM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. NCM shall retain all its liens and security interests in the 623 Grand Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 623 Grand Property to NCM in full satisfaction of any and all Claims held by NCM against the Debtor, Debtor's affiliates or its principles.

### 6.23 Class 3W:        Secured    Claim    of    National    City    Mortgage

The Allowed amount of the Secured Claim of National City Mortgage ("NCM") secured by the McKinley property as defined above in Class 3W shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $40,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $42,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $42,500, the monthly payment to the Claimant shall be in the amount of ($233.66) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to NCM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NCM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. NCM shall retain all its liens and security interests in the McKinley Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the McKinley Property to NCM in full satisfaction of any and all Claims held by NCM against the Debtor or its principles.

**6.24 Class 3X: Secured Claim of National City Mortgage.**

The Allowed amount of the Secured Claim of National City Mortgage ("NCM") secured by the Portland property as defined above in Class 3X shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $20,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $22,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed

Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $22,500, the monthly payment to the Claimant shall be in the amount of ($123.70) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to NCM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NCM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. NCM shall retain all its liens and security interests in the Portland Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Portland Property to NCM in full satisfaction of any and all Claims held by NCM against the Debtor, Debtor's affiliates or its principles.

**6.25 Class 3Y: Secured Claim of Ocwen Loan Servicing, LLC.**

The Allowed amount of the Secured Claim of Ocwen Loan Servicing, LLC ("Ocwen") secured by the 40th Ave property as defined above in Class 3Y shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $34,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $36,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $36,500, the monthly payment to the Claimant shall be in the amount of ($200.68) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to Ocwen left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if Ocwen elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. Ocwen shall retain all its liens and security interests in the 40th Ave Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 40th Ave Property to Ocwen in full satisfaction of any and all Claims held by Ocwen against the Debtor, Debtor affiliates or its principles.

**6.26 Class 3Z: Secured Claim of Ocwen Loan Servicing, L.L.C.**

The Allowed amount of the Secured Claim Ocwen Loan Servicing, LLC ("Ocwen") of NH secured by the Cambridge property as defined above in Class 3Z shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $26,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $28,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month

- 37 -

amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $28,500, the monthly payment to the Claimant shall be in the amount of ($156.69) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to Ocwen left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if Ocwen elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. Ocwen shall retain all its liens and security interests in the Cambridge Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Cambridge Property to Ocwen in full satisfaction of any and all Ocwen held by NH against the Debtor, Debtor's affiliates or its principles.

**6.27 <u>Class 3AA: Secured Claim of Ocwen Loan Servicing, LLC.</u>**

The Allowed amount of the Secured Claim of Ocwen Loan Servicing, LLC ("Ocwen") secured by the Longview property as defined above in Class 3AA shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $35,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $37,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month

amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $37,500, the monthly payment to the Claimant shall be in the amount of ($206.17) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to Ocwen left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if Ocwen elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. Ocwen shall retain all its liens and security interests in the Longview Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Longview Property to Ocwen in full satisfaction of any and all Claims held by Ocwen against the Debtor, Debtor's affiliates or its principles.

**6.28 Class 3BB: Secured Claim of Washington Mutual Bank**

The Allowed amount of the Secured Claim of Washington Mutual Bank ("WMB") secured by the 20th St property as defined above in Class 3BB shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $20,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $22,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $22,500, the monthly payment to the Claimant shall be in the amount of ($123.70) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to WMB left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if WMB elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. WMB shall retain all its liens and security interests in the 20th St Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 20th St Property to WMB in full satisfaction of any and all Claims held by WMB against the Debtor, Debtor's affiliates, or its principles.

**6.29 Class 3CC: Secured Claim of Washington Mutual Bank**

The Allowed amount of the Secured Claim of Washington Mutual Bank ("WMB") secured by the Allred property as defined above in Class 3CC shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $130,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $131,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $131,500 the monthly payment to the Claimant shall be in the amount of ($722.98) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to WMB left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if WMB elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. WMB shall retain all its liens and security interests in the Allred Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Allred Property to WMB in full satisfaction of any and all Claims held by WMB against the Debtor, Debtor's affiliates or its principles.

**6.30 <u>Class 3DD: Secured Claim of Maricopa County Treasurer.</u>**

The Allowed amount of the Secured Claim of the Maricopa County Treasurer ("Maricopa County") secured by the real property defined above in Class 3DD. Maricopa County shall be paid in 5 annual installments commencing one year after the day the Debtor's Chapter 11 Bankruptcy Case was commenced. Maricopa County shall retain all its liens and security interests in the subject real property of the Debtor to the extent it holds an Allowed Secured Claim until the completion of the payments called for herein. Maricopa County's Allowed

Secured Claim shall be paid in five even annual installments commencing one year after the Effective Date and this Allowed Secured Claim shall accrue interest at the statutory rate prescribed by Arizona law.

**6.31**  **Additional Treatment Applicable To Secured Classes 3A through 3DD.**

This section is applicable to all Secured Classes 3A through 3DD described above except for Class 3U.  No due on sale clause or pre payment penalty shall apply or be enforceable. Regardless of any sale however, Secured Classes 3A through 3DD except Class 3U retain all their liens and security interests in the applicable property to the extent they hold an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

Furthermore, all Secured Classes 3A through 3DD except for Class 3U shall send to the Reorganized Debtor a mortgage statement every 30 days prior to the date of each payment called for by the Plan that includes all necessary contact and payment information including but not exhausted by the Creditor's mailing address for payments, account number assigned by the Creditor, and the monthly payment amount including any additional sums being impounded such as for real property taxes or insurance.

**6.32**  **Class 4: Claims of Unsecured Deficiency Creditors.**  The Allowed Claims of the Class 4 Claims of Unsecured Deficiency Creditors will be treated identically as Class 5 General Unsecured Creditors.

**6.33**  **Class 5: Claims of General Unsecured Creditors.**  The Allowed Claims of the General Insider Unsecured Creditors shall be treated as follows:

90 days after the Effective Date, all the Allowed Unsecured Creditors (Classes 4 and 5) shall be paid on a pro rata basis with all other Allowed Unsecured Creditors (Classes 4 and 5) shall be

paid $75,000 from the proceeds of the Cash Pool. To the extent any distributions are withheld 90 days after the Effective Date on account of pending Claims Allowance litigation, said distributions shall be made to the applicable Creditor(s) upon the completion of said Claims Allowance litigation.

**6.34** **Class 7: Interests Of Equity Security Holders.** The Allowed Equity Security Interests of the Equity Security Holders in the Debtor shall be retained and continue in the Reorganized Debtor.

**6.35** **Treatment Applying To All Classes; Release Of Claims By The Debtor Against Creditors And Their Affiliates.** To the extent the Debtor loses tenants as a result of actions taken by lenders or lenders affiliates, including contacting tenants and demanding that the tenants move out immediately, actions these action post-petition may have been in violation of the automatic stay and constitute tortuous interference with contract (which would apply both pre and post-petition) for which the Debtor could sue the offending lender/Creditor. Any claims held by the Debtor against such a Creditor or the Creditor's affiliates arising prior to the filing of this Plan shall be released upon the Effective Date of the Plan as to those classes that voted for the Plan.

**ARTICLE VII**

**IMPLEMENTATION OF THE PLAN**

**7.01** **Procedure To Implement The Plan.** On the date of Plan Confirmation, or prior to where applicable, the following events shall occur:

The Debtor shall:

a. Determine the amounts of all allowed Class claims.

- 43

b.   Execute any documents necessary to implement Plan.

c.   Debtors shall file with the Court post-confirmation quarterly reports, and provide a copy of the same to the United States Trustee, as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case. The Debtors shall pay any post-confirmation quarterly fees as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case.

d.   Appoint a Disbursing Agent.

e.   The Debtor shall assemble the Cash Pool which shall include a $75,000 contribution from the member(s) of the Debtor. The Cash Pool shall be disbursed by the Disbursing Agent to Allowed Unsecured Creditors in amount of no less than $75,000.

f.   In addition to the Cash Pool, the Debtor shall also establish a Reserve Capital Account in the amount of $20,000 from contribution(s) from the member(s) of the Debtor. The Reserve Capital Account shall be used to cover any cash flow shortfalls by the Debtor going forward.

g.   The Debtor shall going forward, as needed to comply with the distribution requirements of the Plan, assemble the Cash Pool from the member(s), to be disbursed by the Disbursing Agent to Allowed Unsecured Creditors pursuant to the terms of the Plan.

**7.02** __The Reorganized Debtor Shall Serve As The Disbursing Agent__. The Debtor shall become the Disbursing Agent on the day after the Effective Date to serve as Disbursing Agent for all payments to be made to the Classes under the Plan.

      **a.** **Duties of The Disbursing Agent**. The Disbursing Agent shall receive, disburse and account to the Court, the Creditors, Equity Security Holders and other parties in interest for the assets, and shall be responsible for reviewing and approving all claims (all disputes to be resolved by the Court), keep adequate records of all transactions, receipts and disbursements, communicating with, and advising all Creditors, Debtors and other parties in interest as needed, and such other duties as may be consistent with the responsibilities of a Disbursing Agent.

      Additionally, the Disbursing Agent shall be responsible at its discretion for liquidating any estate assets including but not exhausted by bringing actions against third parties on behalf of the Debtors. The Disbursing Agent shall also have the right to object to the allowance of any Claim on behalf of the Debtors. These actions may necessitate use of legal services and incurring legal expenses.

      The Disbursing Agent on behalf of the Reorganized Debtors shall file with the Court post-confirmation quarterly reports, and provide a copy of the same to the United States Trustee, as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case. The Disbursing Agent on behalf of the Reorganized Debtors shall pay any post-confirmation quarterly fees as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case. The Disbursing Agent shall acknowledge and assume these duties, and all other obligations of Disbursing Agent set forth herein, by its execution of an

acceptance on the notice of the appointment of the Disbursing Agent to be filed with Court pursuant to Section 7.02 of the Plan.

        **b.**      **Termination of Disbursing Agents' Duties**: The final distribution of payments pursuant to the terms of the Plan set forth herein shall discharge the Disbursing Agent.

        **c.**      **Compensation of Disbursing Agent.** The Disbursing Agent shall not receive any compensation other than the reimbursement of any actual out of pocket costs incurred by the Disbursing Agent in performing the duties authorized by this Plan which may include legal fees and expenses.

        **7.03**    **Effectuating Documents**. On or before the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court such agreements, indentures, instruments and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

        **7.04**    **Property Vests In The Reorganized Debtor** . All Property, assets and rights of the estate of the Debtor shall vest in the Reorganized Debtor, free and clear of all liens, Claims and encumbrances of any kind whatsoever unless expressly provided for under this Plan. The Reorganized Debtor shall be able to manage their affairs, subject only to the limitations set forth in this Plan, without the requirement of further orders from the Bankruptcy Court.

        **7.05**    **Minimum Distributions**. The distributions to holders of Claims pursuant to the Plan are minimum distributions only, and the Reorganized Debtor shall have the right and discretion, at all times, to make full or partial prepayments without penalty to holders of Claims.

        **7.06**    **Unclaimed Monies**. All distribution of money under the Plan which are returned by the Post Office undelivered or which cannot be delivered due to lack of a current address will be

retained by the Disbursing Agent, in trust, in a federally insured bank for the distributee; after the expiration of six months from the date of the first attempted distribution, the unclaimed monies, stock, and all future distributions will be redistributed pro rata to the other distributees, free of any Claim by the distributee.

**7.07** **Void Nature Of Any Post-Petition Trustee's Sales Or Foreclosures**. Any trustee's sales or other forms of foreclosure of the Debtor's real property undertaken after the Petition Date in violation of the 11 U.S.C. section 362 are hereby deemed void. Any Creditor, Creditor's affiliate or agent, or other party, who purported to undertake such a trustee's sale or foreclosure of the Debtor's real property shall use best efforts to correct and document the void nature of their act(s) and document and correct any public record of such a void trustee's sale or foreclosure. The remedy for enforcing this provision expressly includes, but is not exhausted by, that of specific performance and injunction without the need for a bond by the Debtor.

**7.08** **Binding To Debtor And Creditors**. Upon the entry of the Confirmation Order, this Plan shall bind the Debtor now known as the Reorganized Debtor, Equity Security Holders of the Debtor, any entity acquiring or being distributed any property under this Plan, any Creditor, whether or not their Claims and interests are impaired under this Plan and whether or not they have accepted this Plan.

# ARTICLE VIII

# CONDITIONS OF CONFIRMATION

**8.01** **Conditions To Confirmation Of The Plan**. It shall be a condition precedent to the Confirmation of this Plan that the Final Order provide for:

**(a)** Confirmation of this Plan;

- 47 -

**(b)**    To supplement the injunctive provisions of § 524 of the Bankruptcy Code, except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all persons or entities and governmental units shall be stayed, restrained and enjoined from taking any of the following actions on account of any such discharge Claims, debts or liabilities:  (i) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor, or its property; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting or recovering in any manner any judgment, award, decree or order against the Reorganized Debtor, or its property; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against the Reorganized Debtor, or any of its property, or any direct or indirect transferee of any property of, or any direct or indirect successor in interest to, or any property of such transferee or successor; (iv) setting-off, seeking reimbursement of, contribution from, subrogation against or otherwise recouping in any manner directly or indirectly, any amount owed to the Reorganized Debtor, or any direct or indirect transferee of any property of, or any successor in interest to the Reorganized Debtor, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

Pursuant to the Plan, the Debtor (the **"Released Party"**) shall not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of the Chapter 11 case, any settlement  related to the Chapter 11 case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the property to be

distributed under the Plan, except only to the extent that liability is based on willful misconduct. The Released Party shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan, or in the context of the Bankruptcy Case.

(c) Acceptance or rejection of this Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and no Person conducting or participating in solicitation, including Debtors, shall be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation government solicitation of acceptance or rejection of a plan of reorganization.

## ARTICLE IX

### GENERAL PROCEDURES FOR OBJECTING TO CLAIMS AND RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS

**9.01  Claim Objection Deadline**. Unless another date is established by the Bankruptcy Court, all objections to Claims shall be filed with the Clerk of the Bankruptcy Court and served on the holders of such Claims (unless earlier filed) by the later of ninety (90) days after the Effective Date or the date that is ninety (90) days after a particular proof of Claim (or a request for payment in the case of Administrative Claim) has been filed.  If an objection has not been filed to a Claim by the deadlines established herein, the Claim shall be treated as an Allowed Claim; provided, however, that no objection shall be required if a Claim was not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated, or was not evidenced by a timely filed proof of Claim.  No such unlisted, disputed, contingent, unliquidated or unfiled Claim shall be treated as an Allowed Claim, except pursuant to a Final Order so providing.   The objection

deadlines established herein shall not apply to Claims and causes of action that must be asserted through an adversary proceeding.

**9.02** <u>**Preservation Of Objections To Claims**</u>. Except as otherwise provided in this Plan or in the Confirmation Order or other Final Order, no compromise, waiver or release of Claims, demands or causes of action, that may be provided for in this Plan or in any Final Order of the Court shall, in any way, limit or impair the right of the Reorganized Debtor to prosecute objections to Claims, and the Reorganized Debtor hereby retain all objections to the allowability of a Claim and all defenses associated with such objections.

**9.03** <u>**No Distributions Pending Resolution Of Objections**</u>. Notwithstanding any other provision of this Plan, no distributions shall be made with respect to a contested Claim (or any contested portion of a Claim, if such Claim is not severable) by the Reorganized Debtor unless and until all objections to such contested Claim have been determined by Final Order.

**9.04** <u>**Interest On Contested Claims And Contingent Claims**</u>. No interest shall accrue on a contested Claim during the period from the Effective Date until the date on which the Claim is allowed, if ever, and no interest shall accrue on a contingent Claim during the period from the Effective Date until the date on which the Claim becomes fixed and absolute or is otherwise allowed, if ever; provided that a contested Claim or a contingent Claim that is specifically entitled to post-confirmation interest by the terms of this Plan, and that is ultimately allowed, shall accrue post-confirmation interest from the Effective Date.

**9.05** <u>**Treatment Of Contingent Claims**</u>. Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed and absolute or is disallowed, such Claim shall be treated as a contested Claim for all purposes related to the distributions under this Plan;

provided, however, that the distribution entitlements shall arise only from the date on which a contingent Claim becomes fixed and absolute or is otherwise allowed.

**9.06 <u>Disallowance Of Post-Petition Additions</u>**. The Reorganized Debtor shall not be required to make specific objection to proofs of Claim that allege a right to recover post-petition interest, penalties, fees, and other accruals with respect to pre-petition Claims (except Secured Claims entitled to such accruals pursuant to § 506(b) of the Bankruptcy Code), and any Claim amounts attributable to such post-petition interest, penalties, fees and other accruals shall be disallowed in full upon entry of the Confirmation Order.

**9.07 <u>Settlement Of Disputed Claims</u>**. The Reorganized Debtors shall be authorized to settle, without Court approval, any disputed Claims with a settlement amount that does not exceed five thousand dollars ($5,000).

**9.08 <u>Preservation Of Debtor's Claims, Demands And Causes Of Action</u>**. All claims, demands and causes of action held by, through or on behalf of the Debtors, against any other person or entity, are hereby preserved in full, unless otherwise provided by this Plan; and no provision of this Plan shall impair the rights of the Reorganized Debtor with respect to any of such claims, demands and causes of action to prosecute and defend against any such preserved claims, demands and causes of action.

**ARTICLE X**

**GENERAL PROVISIONS**

**10.01 <u>Post-Confirmation Operating Of The Automatic Stay</u>**. Any lawsuits pending in any court (other than the Bankruptcy Court) that seek to establish Debtors' liability on pre-petition Claims and that are stayed pursuant to § 362 of the Bankruptcy Code, shall be dismissed as of the

Effective Date unless the Reorganized Debtor elect to have their liability determined by such other courts. Any pending motions to lift or vacate the automatic stay shall be deemed denied as of the Effective Date and the stay shall remain in effect. Any such pre-petition Claims shall be determined as provided in this Plan.

**10.02    Prohibition Against Discriminating Treatment Against The Reorganized Debtor**. No individual, entity or government may discriminate against the Reorganized Debtor solely because of the commencement, continuation or termination of this Chapter 11 proceeding, or because of any provision of this Plan, or the legal effect of this Plan, and the Confirmation Order shall constitute an express injunction against such discriminating treatment.

**10.03    Compliance With Tax Requirements**. In connection with this Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities.

**10.04    Insurance**. The Reorganized Debtor shall use its best efforts to maintain insurance on any non-exempt pre-petition property they retain pending completion of distributions to Creditors.

**10.05    Termination Of Adequate Protection Payments**. Upon the entry of a Confirmation Order by the Court, any and all payments to Secured Creditors for adequate protection shall be terminated.

**10.06    No Additional Charges**. Except as expressly stated in this Plan, or as allowed by Court order, no interest, penalty, late charge or additional charges (such as attorneys' fees) shall be allowed on any Claim subsequent to the Filing Date.

**10.07    Deficiency Claims**. Unsecured Creditors whose Claims arise out of a deficiency resulting from the abandonment of Collateral to a previously Secured Creditor or resulting from

orders granting relief from the provisions of § 362 of the Bankruptcy Code, must file their Claims within thirty (30) days after Confirmation of this Plan unless the Court enters an Order making an 11 U.S.C. section 506 determination of secured status as to the subject Unsecured Creditor prior to Conformation in which case said Unsecured Creditor must filed its Claim within thirty (30) days after the entry of said Order.

**10.08    Barring Of Claims**.  The entry of the Confirmation Order shall permanently bar the filing and asserting of any Claims against the Debtors which arose or relate to the period of time prior to the Confirmation Date, which were listed by the Debtors in its Schedules and Statement Of Financial Affairs (as amended) filed with the Court or were not evidenced by timely and proper proofs of Claim filed with the Court.

**10.09    Amount Of Claims**.  All references to Claims and amount of the Claims refer to the amount of the Claims as allowed by the Court.  The Debtors reserve the right, both before and within sixty days after the Effective Date, to object to Claims so as to have the Court determine the amount allowed to be paid under this Plan.

**10.10    Remedies To Cure Defects**.  After Confirmation, the Reorganized Debtor may, with the approval of the Court, and so long as it does not materially and/or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation of this Plan, in such a manner as may be necessary to carry out the purposes and the intent of this Plan.

**10.11    Retention Of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 cases for the following purpose:

        **(a)**      To determine any and all objections to the allowance of Claims;

**(b)**     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or this Plan;

**(c)**     To determine any applications for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

**(d)**     To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date;

**(e)**     To consider any modifications of this Plan, remedy and defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

**(f)**     To determine any and all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's or entity's obligations thereunder;

**(g)**     To determine all controversies, suits and disputes arising as a result of a demand by any utility for a deposit or other form of security as a condition to providing post-confirmation utility services to the Debtor;

**(h)**     To determine all controversies, suits and disputes of this Plan as a result of discriminatory treatment of the Debtor;

**(i)**　　　To hear and determine any Claim or cause of action by or against the Debtor, and to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtor;

　　　　　　**(j)**　　　To issue such orders in aid of execution of this Plan, as are authorized by § 1142 of the Bankruptcy Code; and

　　　　　　**(k)**　　　To determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with this Plan or the Confirmation Order.

　　　**10.12**　**<u>Modification Of Plan</u>**.  Modifications of this Plan may be proposed in writing by Debtor at any time before Confirmation, provided that this Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with § 1125 of the Bankruptcy Code.  This Plan may be modified at any time after Confirmation and before its substantial consummation, provided that this Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and hearing, confirms this Plan, as modified, under § 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

　　　**10.13**　**<u>Severability</u>**.  Wherever possible, each provision of this Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Plan.  Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law,

Debtor may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

**10.14 <u>Revocation Of Plan</u>**. Debtor reserves the right to revoke and/or withdraw this Plan prior to entry of the Confirmation Order. If the Debtor revokes and/or withdraws this Plan, or if Confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or entity or to prejudice in any manner the rights of the Debtor or any person or entity in any further proceeding involving the Debtor.

**ARTICLE XI**

**DISCHARGE OF DEBTOR**

**11.01 <u>Discharge Of The Debtor</u>**. Except as otherwise provided in this Plan or in the Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims including any interest or Claims from the petition date. Confirmation of this Plan shall discharge the Debtor from all Claims or other debts, liabilities or obligations of any kind or nature, that arose, in whole or part, before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of Claim based on such debt is timely filed or deemed filed pursuant to § 501 of the Bankruptcy Code, a Claim based on such debt is allowed pursuant to § 502 of the Bankruptcy Code, or the holder of a Claim based on such debt has accepted this Plan.

**11.02 <u>Effect Of Discharge On Other Entities</u>**. Pursuant to § 524(e) of the Bankruptcy Code, except as otherwise provided in this Plan, the discharge of a debt of the Debtors, pursuant to this Plan, shall not affect the liability of any other entity on, or the Property of any other entity for, such debt.

**11.03  Modification Of Plan Due To Default**. If any Creditor holding an Allowed Claim seeks such an Order, the Debtor may seek modification of the Plan prior to entry of the Order based upon good cause for the default and reasonableness of the modification.

## ARTICLE XII

### TREATMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES

**12.01  Description of Executory Contracts**. The Debtor has no executory contracts in the capacity as a lessee. The Debtor does rent its residential real properties to tenants in a capacity as a lessor. Attached hereto as Exhibit 1 is a current list of these executory contracts. Additional terms of these leases are set forth in the Debtor's Schedule G. The Debtor shall assume these executory contracts listed therein.

**12.02  Rejected If Not Assumed**. Except for month to month contracts, all contracts and leases of Debtor that constitute executory contracts or unexpired leases as of the date of filing the Chapter 11 petition for relief shall be rejected as of the Effective Date, except for the leases set forth or described in Section 12.01.

**12.03  Disputes As To Executory/Unexpired Status**. Notwithstanding § 12.02 above, if on the Effective Date there is a pending dispute as to whether a contract is executory or a lease is unexpired, Debtor's right to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

**12.04  Expired Contracts Or Leases**. Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by Final Order prior to the Effective Date, is hereby specifically rejected.

**12.05   Bar To Rejection Damages.**  If the rejection or an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors as follows:  (a) if the Claim arises from the rejection of an executory contract or unexpired lease by operation of any provision of this Plan, thirty (30) days after the date of service of notice of the Effective Date; (b) if the Claim arises from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order) authorizing rejection of such contract or lease, thirty (30) days after service of notice of the entry of such Final Order; or (c) if the Claim arises from the rejection of an executory contract or unexpired lease that is rejected after withdrawal of the assumption thereof, thirty (30) days after service of notice of the assumption withdrawal.   The foregoing applies only to Claims arising from the rejection of an executory contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a proof of Claim filed by earlier applicable bar dates or shall be barred and unenforceable.

**12.06   Cure Of Defaults Upon Assumption.**  Upon the assumption of any executory contract or unexpired lease (including an executory contract or unexpired lease deemed to be such by assumption herein) including, without limitation, defaults by the Debtor specified in § 365(b)(10) of the Bankruptcy Code and any defaults by the Debtor specified in § 365(b)(2) of the Bankruptcy Code, shall be deemed cured except to the extent written demand for the cure of or demonstration of ability to cure any default has been filed with the Bankruptcy Court and served upon Debtor by the non-Debtor party to such executory contract or unexpired lease within thirty (30) days after the date of service of notice of the Effective Date.  In the absence of a timely demand in accordance with the

foregoing, Debtor's obligation to cure or demonstrate the ability to cure shall be deemed waived, released and discharged. If any non-Debtor party to such executory contract or unexpired lease timely serves and files such written demand, and Debtor files an objection in writing to such demand within thirty (30) days thereafter, the Bankruptcy Court shall, by the issuance of a Final Order, determine the amount actually due and owing in respect of such demand or shall approve the settlement of such demand. Debtor shall have thirty (30) days thereafter in which to effect such cure or withdraw <u>ab</u> <u>initio</u> their assumption of such executory contract or unexpired lease whereupon such executory contract or unexpired lease shall be deemed to have been rejected as of the date of the Chapter 11 petition for relief.

      **12.07** <u>**Treatment of Claims Arising From Assumption Or Rejection**</u>. All Allowed Claims arising from the assumption of an executory contract or unexpired lease shall be treated as a General Unsecured Claim unless otherwise ordered by Final Order of the Bankruptcy Court. No such Claims are anticipated in this case. In the event no General Unsecured Class exists, but one is needed, the Debtor will create one with a modification.

      DATED this 15th day of March, 2010.

<u>/s/ Mark J. Giunta SBN 015079</u><br>
Mark J. Giunta<br>
Law Office of Mark J. Giunta<br>
845 North Third Ave.<br>
Phoenix, Arizona 85003-1408

Approved by Debtors:

<u>/s/ Donald Park</u>
in his capacity as authorized representative of

Park Holdings, LLC, the controlling member of the Debtor.

A COPY of the foregoing was electronically filed with the Clerk of the U.S. Bankruptcy Court
This 15th day of March, 2010.

Copy of the foregoing mailed/faxed/emailed
This 15th day of March, 2010 to:

Barbara Lee Caldwell * blc@ashrlaw.com
4742 North 24th Street, Suite 100
Phoenix, Arizona 85016-4859
Counsel for Maricopa County

Eugene F. O'Connor
Folks & O'Connor PLLC
1850 N. Central Ave Suite 1140
Phoenix, AZ 85004
Email: oconnor@folsoconnor.com

Mark S. Bosco
Tiffany & Bosco P.A.
2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
Email: ecf@tblaw.com

Brice, Vander Linden & Wernick, P.C.
American Home Mortgage Servicing, Inc
1525 S. Beltline Road, Suite 100 N
Coppell, Texas 75019

Kevin Hahn, #024277
MALCOLM CISNEROS, A Law Corporation
2112 Business Center Drive
Second Floor
Irvine, California 92612
Email: kevin@mclaw.org

Matthew A. Silverman
Jessica R. Kenney
McCarthy    Holthus    Levine
3636 North Central Avenue
Suite 1050

Phoenix, AZ 85012
(602) 230-8726
Email: matthew.silverman@azbar.org

U.S. Trustee's Office
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Kesha M. Jennings

## APPENDIX A

## DEFINITIONS

**Defined Terms**. For purposes of this Plan, the capitalized terms used in this Plan shall have the meanings as set forth below:

      **1.01**      **Administrative Claims/Expenses**. Claims and expenses which are allowed pursuant to § 503(b) of the Bankruptcy Code and which are entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code.

      **1.02**      **Affiliate**. This term includes any entity (including persons) that directly or indirectly own, control, or hold with power to vote, 20 percent or more of the outstanding voting securities of the debtor. Park Holdings, LLC, Donald W. Park and Michelle M. Park Living Trust U/T/A dated August 17, 2001, and Donald W. Park and Michelle M Park are all Affiliates of Missouri Realty, LLC, the Debtor in this Bankruptcy Case.

      **1.03**   **Allowed Claim**. A Claim (a) with respect to which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules Of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the list of Creditors prepared and filed with the Court pursuant to Federal Rules Of Bankruptcy Procedure, Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case, as to which no objection to the allowance thereof has been filed within any applicable period of limitation fixed by Federal Rules Of Bankruptcy Procedure, Rule 3007, the Plan, an order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise provided hereafter in the Plan.

      **1.04**   **Allowed Secured Claim**. This term refers to and means a Claim that is both an Allowed Claim and a Secured Claim.

      **1.05**   **Allowed Unsecured Claim**. This term refers to and means a Claim that is both an Allowed Claim and an Unsecured Claim.

      **1.06**   **Ballot**. This term refers to and means the ballot for accepting or rejecting the Plan which will be distributed to holders of Claims in Classes that are impaired under this Plan and are entitled to vote on this Plan.

**1.07** **Bankruptcy Code**. The Bankruptcy Code is the Bankruptcy Reform Act Of 1978, sometimes referred to as the Bankruptcy Code Of 1978, as contained in Title 11 U.S.C.A. § 101, et seq., and all amendments thereto.

**1.08** **Bankruptcy Court or Court**. This term refers to and means the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Bankruptcy Cases, including the United States District Court for the District of Arizona to the extent that the reference of all or part of the Bankruptcy Cases is withdrawn.

**1.09** **Bankruptcy Rules**. This term refers to and means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Bankruptcy Cases.

**1.10** **Bankruptcy Case**. This term refers to and means the above-captioned Chapter 11 case filed by Missouri Realty, LLC.

**1.11** **Bar Date**. The last day the Court will allow a Proof of Claim to be filed in this bankruptcy proceeding. The Bar Date is usually the date set for the hearing on approval of the Disclosure Statement and notice of the Bar Date will accompany the notice setting the hearing on approval of the Disclosure Statement, unless another deadline has been set by the Court.

**1.12** **Business Day**. This term refers to and means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

**1.13** **Cash Collateral** Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in § 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under Title 11 of the Bankruptcy Code.

**1.14** **Chapter 11**. Chapter 11 of the Bankruptcy Code. Reference to section numbers are references to sections in the Bankruptcy Code 11 U.S.C. § 101, et seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

**1.15** **Claim**. A right to (1) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured or unsecured; or (2) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

      **1.16** **Class**. One or more creditors grouped together as defined herein. The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to § 502(a) of the Bankruptcy Code. However, only those Claims allowed pursuant to § 502(a) of the Bankruptcy Code will receive payment under the Plan.

      **1.17** **Collateral**. Property which is pledged as security for the satisfaction of a debt. Collateral is additional security for performance of principal obligation, or that which is by the side, and not in direct line. Property subject to a security interest, including accounts, contract rights and chattel paper which have been sold.

      **1.18** **Collateral Value**. Collateral Value is the fair market value of the any collateral as determined by the Court.

      **1.19** **Confirmation**. The formal approval of the Bankruptcy Court of a Plan Of Reorganization.

      **1.20** **Confirmation Date**. The date upon which the Confirmation Order is entered by the Court.

      **1.21** **Confirmation Hearing**. This term refers to and means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Bankruptcy Code § 1128, including any adjournment or continuation of that hearing from time to time.

      **1.22** **Confirmation Order**. The Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation.

      **1.23** **Creditor**. A Creditor or all Creditors of the Debtor holding Allowed Claims for the debts, liabilities, demands or Claims of any character whatsoever, as defined in § 101(4) of the Bankruptcy Code.

      **1.24** **Debtor**. The Debtor is Missouri Realty, LLC, also referred in the Plan as "Missouri".

      **1.25** **Disclosure Statement**. The Disclosure Statement is the Disclosure Statement In Support Of Debtor's Plan of Reorganization in its present form, or as it may be amended or supplemented.

1.26  **Disputed Claim**.  This term refers to and means every Claim:  (a) that is scheduled by the Debtors as disputed, contingent, or unliquidated; and/or (b) that is not an Allowed Claim.

1.27  **Effective Date**.  The date following the Confirmation Date after which no appeal of the Confirmation Order can be taken or sixty (10) days from the Confirmation Date, whichever is later.

1.28  **Estate**.  This term refers to and means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

1.29  **Executory Contract**.  This term refers to and means every unexpired lease and other contract which is subject to being assumed or rejected under Bankruptcy Code § 365.

1.30  **Final Order**.  A Final Order is an order of the Court which, not having been reversed, modified or amended and not being stayed and the time to appeal from which or to seek review or rehearing of which having expired, and no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and in full force and effect.

1.31  **Impaired/Impaired Class**  Under § 1124 of the Bankruptcy Code, a Class Of Claims is impaired under a Plan unless, with respect to each Claim of such Class:  (i) it is paid in full on the Effective Date of the Plan; (ii) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder to such Claim; or (iii) all defaults are cured, the original maturity of the Claim is reinstated and the Claim is otherwise treated as provided in clause (ii) above.

1.32  **Interests**.  This term refers to and means the rights of the members of the Debtor.

1.33  **Interpretation**.  The headings in this Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.34  **IRS**.  This term refers to and means the Internal Revenue Service.

1.35  **Personal Property**.  This term refers to and means all personal property owned by Debtor.

1.36  **Plan**.  This term refers to and means this Plan of Reorganization Proposed By the Debtor and every modification thereof, if any, filed by the Debtor.

1.37  **Plan Confirmation**.  Entry by the Court of an order confirming the Plan at or after a hearing held pursuant to § 1128 of the Bankruptcy Code.

1.38 **Preserved Lien(s)**.  Any liens required under § 1124(2) of the Bankruptcy Code.

1.39 **Priority Claim(s)**.  Any Claim or Claims entitled to priority pursuant to § 507(a) of the Bankruptcy Code other than a Tax Claim or a Claim for Administrative Expenses.

1.40 **Professional Charges**.  This term refers to and means all professional fees and costs by professional persons approved by the Bankruptcy Court to serve the Debtors or the Committee which have accrued during the pendency of the Debtors' Bankruptcy Cases up to and including the Confirmation Date.

1.41 **Property**:  All real and personal Property (individually or as a whole) of the estate of the Debtor as previously or hereafter determined by Final Order of a court of competent jurisdiction and/or as defined in § 541 of the Bankruptcy Code, including, but not limited to, any and all Claims or causes of action in favor of the Debtor against third parties (except as otherwise provided herein).

1.42 **Property Broker**.  This term refers to and means the independent person engaged to market and sell the property or any portion thereof.

1.43 **Proponent**.  This term refers to and means the Debtor who is proposing this Plan of Reorganization.

1.44 **Pro Rata**.  This term refers to and means proportionally, so that the ratio of the consideration distributed on account of an Allowed Claim in the Class (or sub-class) and consideration distributed on account of all Allowed Claims in the Class (or sub-class) is the same as the ratio of the Allowed Claims in the Class (or sub-class).

1.45 **Real Property**  This term refers any of the real property of the Debtor as oppose to personal property.

1.46 **Reorganized Debtor**.  The Debtor, after Confirmation of the Plan, and its successors and assigns.

1.47 **Secured Claim(s)**.  Any Claims, other than a Tax Claim, secured by Property of the Debtor under a duly perfected security interest, to the extent of the value of the Collateral (security), as determined in accordance with § 506 of the Bankruptcy Code.

1.48 **Secured Creditor(s)**.  All Creditors other than taxing entities, who hold a lien, security interest or other encumbrance which has been properly perfected as required by law with respect to Property owned by the Debtor.

**1.49  Tax Claim(s)**. Any Claim for taxes entitled to priority pursuant to § 507(a)(7) of the Bankruptcy Code.

**1.50  Term Of The Plan**. That period after the Effective Date during which payments are being made to Creditors in Classes 5.

**1.51  Unsecured Claim(s)**:  All Claims not secured by collateral of the estate.

**1.52  Unsecured Creditor(s)**. All Creditors of Debtor holding Unsecured Claims of any character whatsoever, except Claims entitled to priority pursuant to § 507 of the Bankruptcy Code.

**1.53  Unsecured Deficiency Claimant(s)**. Claims resulting from the excess of the Secured Claims over the Collateral Value, as determined pursuant to § 506 of the Bankruptcy Code or unless otherwise agreed to by the Secured Creditors.

**1.54  Undefined Terms.**  Terms and phrase, whether capitalized or not, that are used and not defined herein, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.

# EXHIBHIT 1

**Missouri Tenant List**
**October 21, 2009**

| Property Address | Tenant Name | Monthly Rent | Lease Ends |
|---|---|---|---|
| 10554 E. Arbor Ave<br>Mesa, AZ 85208 | Steve & Angela Alonso | $1,450.00 | 5/31/2010 |
| 7749 W. Boca Raton<br>Peoria, AZ 85381 | Ross & Jackie Gribbin | $1,095.00 | 8/31/2010 |
| 8001 W. Sweetwater Ave<br>Peoria, AZ 85381 | Tony Oyola | $1050.00 | 10/31/2009 |
| 313 W. Topeka Dr<br>Phoenix, AZ 85027 | Trisha Balowski | $895.00 | 4/28/2011 |
| 7912 W. Whyman Ave.<br>Phoenix AZ 85043 | Victor Reyes | $995.00 | 12/31/2009 |
| 1101 E. 8th St<br>Mesa, AZ 85203 | Stacy & Marianne Pool | $995.00 | Month-to-month |
| 15806 S. 35th Way<br>Phoenix, AZ 85044 | Kevin & Holly Mitchell | $1650.00 | 6/30/2010 |
| 1654 W.Enfield Way<br>Chandler AZ 85248 | Mohd Islam | $1,150.00 | 3/31/2010 |
| 962 S. MacDonald<br>Mesa, AZ 85210 | Ricardo Gallegos | $750.00 | 10/31/2009 |
| 8114 E. Mitchell Drive<br>Scottsdale AZ 85251 | Kristin Roebuck | $950.00 | 6/30/2010 |
| 6213 W. Osborn<br>Phoenix, AZ 85033 | Anthony & Angel Parra | $750.00 | 8/31/2010 |
| 824 W. Paseo Way<br>Phoenix, AZ 85041 | Darin Camfield | $795.00 | 3/31/2010 |
| 8068 E. Virginia Ave<br>Scottsdale, AZ 85257 | Jonathan & Brian Lewis | $1095 | 9/30/2010 |
| 822 South 3rd Ave<br>Phoenix AZ 85003 | No tenant | $0 | None |
| 921 E. Amelia St<br>Phoenix, AZ 85014 | Alejandrina Delgado | $588.38 | 8/31/2010 |
| 443 S. Grand Ave<br>Mesa, AZ 85210 | Robert & Ajay Raasch | $795.00 | 3/31/2010 |
| 1723 E. Harvard St<br>Phoenix, AZ 85006 | Antonio Estrada | $689.07 | Month-to-month |
| 2724 E. Tamarisk Ave<br>Phoenix, AZ 85040 | Juan Talingo | $495.00 | 7/31/2010 |
| 1018 N. 26th St<br>Phoenix, AZ 85008 | Michale & Kristie Bogart | $595.00 | 1/31/2010 |

| | | | |
|---|---|---|---|
| 623 S. Grand Ave Mesa, AZ 85210 | Eva M Vela | $750.00 | Month-to-month |
| 3526 E. McKinley Phoenix, AZ 85020 | Robert Benney | $850.00 | Month-to-month |
| 1428 E. Portland St Phoenix, AZ 85006 | Daniel Rodriquez | $595.00 | 12/31/2009 |
| 914 N. 40th Ave Phoenix, AZ 85009 | Carrie & Saranda Schoen | $650.00 | 6/30/2010 |
| 1623 E. Cambridge Ave Phoenix, AZ 85006 | Laura Delgadillo | $595.00 | 5/31/2010 |
| 4225 N. Longview Ave, Phoenix, AZ 85014 | Sitha & Lonnie Brock | $750.00 | 6/30/2010 |
| 2244 N. 20th St Phoenix, AZ 85006 | Marco Limon | $745.00 | Month-to-month |
| 4024 S. Allred Drive Tempe, AZ 85282 | Linda/ Laurence/ Kimberly S | $1095.00 | 8/31/2010 |
| 1953 W. Monroe St Phoenix, AZ 85009 | Sherana and Nadine Reed | $794.12 | Month-to-month |
| 2213 E. Sheridan St Phoenix AZ 85006 | Shirley Hull | $695.00 | 2/28/2010 |
| | | | |